## In The United States District Court
## For The Northern District Of Texas
## Dallas Division

| | |
|---|---|
| Jonathan Fierro, §<br> #58622-177, §<br>　　　　　Movant, §<br> §<br>v. §<br> §<br>United States Of America, §<br>　　　　Respondent. § | Civil Case No. 3:20-CV-3708-N-BK<br>(Criminal No. 3:19-CR-193-N-2) |

### Findings, Conclusions and Recommendation
### of the United States Magistrate Judge

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States Magistrate Judge for case management, including the issuance of findings and a recommended disposition where appropriate. Movant Jonathan Fierro ("Fierro") filed a *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The Court subsequently held an evidentiary hearing. For the reasons stated here, Fierro should be **GRANTED** an out-of-time appeal.

### I. BACKGROUND

In 2019, Fierro pled guilty to possession with intent to distribute methamphetamine and, on January 13, 2020, he was sentenced to 240 months' imprisonment. Crim. Doc. 56. Although Fierro did not file a direct appeal, he timely filed this § 2255 motion. Doc. 2. He alleges his trial counsel rendered ineffective assistance by failing to file a notice of appeal. Doc. 2 at 7; Doc. 2 at 11-12; Doc. 15 (*Answers to Mag. Judge's Questionnaire*). Fierro also asserts that trial counsel was ineffective in failing to (1) "[p]roperly [i]nvestigate all leads[ ] providing evidence of petitioner's innocence" and (2) object to the presentence report ("PSR"). Doc. 2 at 7. The

Government filed a response in opposition, and the Court subsequently granted Fierro's motion to supplement with affidavits of his mother and sister in support of his claim that counsel failed to file an appeal.  Doc. 11; Doc. 12; Doc. 11.

On November 10, 2021, an evidentiary hearing was held.  Doc. 17.  Fierro filed a post-hearing brief seeking relief based on counsel's alleged failure to file a notice of appeal and, the related claim of failure to properly consult with him regarding an appeal.  Doc. 27.  The Government, however, argues the latter claim is new, does not relate back to Fierro's failure-to-file claim, and is thus time barred.  Doc. 30.

Upon review, the Court finds that Fierro's claim that counsel was ineffective for failing to timely file a notice of appeal has merit.  Thus, the Court does not reach the merits of the claim that counsel also failed to consult with Fierro regarding appeal.

## II. APPLICABLE STANDARD

The Sixth Amendment guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding.  *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).  To obtain post-conviction relief on a claim that defense counsel was constitutionally ineffective, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness" and that any such deficiency was "prejudicial to the defense."  *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the United States Supreme Court applied the *Strickland* test to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal."  The Supreme Court reaffirmed the well-settled rule that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that

is professionally unreasonable." *Flores-Ortega,* 528 U.S. at 477 (cited cases omitted); *see also Garza v. Idaho,* — U.S. —, 139 S. Ct. 738, 746 (2019) ("Where . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."). Under such circumstances, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken'" and "'no further showing from the defendant of the merits of his underlying claims'" is required. *Garza,* 139 S. Ct. at 744, 747 (quoting *Flores-Ortega,* 528 U.S. at 484); *United States v. Tapp,* 491 F.3d 263, 265-66 (5th Cir. 2007) (finding the defendant need only show "a reasonable probability that, but for counsel's failure, he would have timely appealed"). This "presumption applies even when the defendant has signed an appeal waiver." *Garza,* 139 S. Ct. at 744-45; *see also Tapp,* 491 F.3d at 266 (extending the *Flores-Ortega* rule to cases where a defendant has waived his right to direct appeal and collateral review).

### III. EVIDENTIARY HEARING TESTIMONY

Fierro and his trial counsel, Carl Day, testified at the evidentiary hearing. A summary of that testimony follows.

#### A. Fierro's Testimony

Fierro testified that, following his guilty plea, he understood that he had a limited right to appeal his sentence but did not comprehend fully what that meant because Day had not explained it to him. Doc. 26 at 7. Fierro recounted his visit with Day at the Johnson County Jail to review the PSR prior to sentencing. Doc. 26 at 8. According to Fierro, Day generally summarized the PSR and told him where he fell within the guidelines. Doc. 26 at 7-9. Day, however, did not give Fierro a copy of the PSR or review every page with him. *Id.*

Fierro testified that Day next visited him immediately before the sentencing hearing in the courthouse holdover cell. Doc. 26 at 9-10. Fierro testified that Day told him that he "was about to get 20 years" and that Day was "going to come back and help . . . [Fierro] get [his] appeal." Doc. 26 at 9-10. Fierro averred that because 20 years was greater than the estimate that Day had previously given him, he told Day that he wanted to appeal, and Day assured him he was going to appeal. Doc. 26 at 10. Fierro stated that at that meeting, he did not understand the distinction between "filing a notice of appeal" and "actually filing an appeal." Doc. 26 at 10-11. Fierro also asked Day to "object to the gun," which had resulted in a two-level increase in offense level. Doc. 26 at 12. According to Fierro, Day neither filed objections to the PSR nor advised him that he could be eligible for the safety valve if he did not possess the gun. Doc. 26 at 12-13.

After the 20-year sentence was pronounced, Fierro testified that Day did not visit him in the holdover cell as promised. Doc. 26 at 13. Fierro later learned from his mother that Day had spoken to Fierro's family outside the courtroom and that, when the family asked Day if he was going to appeal, Day said "no" and it would cost $30,000 to appeal. Doc. 26 at 13-14. Fierro stated that his family called Day post-sentencing to no avail and that Day did not subsequently visit him either in the Johnson County Jail or the Bureau of Prisons (BOP) facility. Doc. 26 at 14-15.

On February 21, 2020, having not heard from counsel in over one month, Fierro wrote a letter to Day (1) requesting his "discovery" and appeal brief, and (2) noting that though Day had previously indicated that he would appeal Fierro's case after sentencing, Fierro had not heard from him since. Doc. 26 at 15; Doc. 2 at 11 (for copy of letter). According to Fierro, when he wrote the letter, he still believed that Day had filed an appeal on his behalf. Doc. 26 at 19.

4

Although Day subsequently responded to Fierro's letter, the BOP refused to give it to Fierro because it contained a copy of the PSR. Doc. 26 at 17. Shortly thereafter, the BOP instituted a COVID-19 lockdown, which made outside communication more difficult. Doc. 26 at 17.

Fierro summarized that he directed Day to file an appeal on his behalf in the holdover cell right before he was sentenced because he did not want to serve 20 years in prison. Doc. 26 at 15-16. Day, however, did not advise Fiero that an appeal would cost $30,000 or that Day could file a notice of appeal and then move to withdraw. Doc. 26 at 15-18. Also, Day did not discuss with Fierro his appellate rights or advise his family that if they could not pay the $30,000 retainer, Day could still file a notice of appeal and move to withdraw, and the Court would consider appointing an attorney for appeal. Doc. 26 at 18-19. Fierro reiterated that, while in the holdover, immediately before sentencing, Day "said he was going to appeal, so [Fierro] said, 'Okay, let's do it." Doc. 26 at 20-21. Fierro did not further discuss filing an appeal with Day after the sentencing hearing because Day did not visit him. Doc. 26 at 20-21.

Fierro averred that he did not understand Judge Godbey's admonition at sentencing that Fiero could ask the clerk to file a notice of appeal on his behalf. Doc. 26 at 22. Also, Fierro conceded that he did not try to contact Day before mailing his February 21, 2020, letter to Day. Doc. 26 at 23. Fierro again testified that Day did not counsel him about his appeal rights. He stated that he was confused about what Judge Godbey told him at sentencing regarding his appeal rights and believed he had been given back all his appeal rights despite the waiver in his Plea Agreement. Doc. 26 at 24-25. Fierro also testified that because he was under the impression that Day had filed an appeal, he had no reason to contact Day after the sentencing. Doc. 26 at 26. Fierro confirmed, however, that neither he nor his mother received a retainer agreement from Day explaining the cost of representation on appeal. Doc. 26 at 27. Likewise,

Fierro denied receiving Day's letter in response to his, advising that he had waived his appeal rights. Doc. 26 at 27.

Finally, Fierro testified that Day did not advise him before sentencing that an appeal would be frivolous. Doc. 26 at 28. In response to the Court's inquiry about the sequence of the events, Fierro clarified that he only spoke with Day about appealing in the holdover cell immediately before the sentencing, and that Day told Fierro he likely would receive a 20-year sentence but not to worry because he could appeal it. Doc. 26 at 29-31.

Neither Fierro's mother nor his sister were available to testify; the mother was out-of-state for cancer treatment and the sister was assisting her. Doc. 26 at 31. Fierro, thus, asked the Court to take judicial notice of their affidavits in which they affirmed that, immediately before and after the sentencing, Day assured them that he would file a notice of appeal and would represent Fierro on appeal. Doc. 12 at 5-7. The two also attested that at the time, Day seemed primarily interested in securing a new retainer agreement and $30,000 for representing Fierro on appeal. *Id.*

### B. Day's Testimony

Day testified that he is very familiar with the federal appellate process and that he did advise Fierro about his appeal rights during the guilty plea proceedings. Doc. 26 at 32-33 & 35-36. Day also recalled discussing the PSR with Fierro, likely at the jail where he was confined, and advising him of the advisory guideline range and the sentence he could expect receiving at sentencing. Doc. 26 at 38-41. Day averred that while he debated likely objections to the PSR with Fierro, he did not recall that Fierro wanted to object to the firearm. Doc. 26 at 41-42.

Day confirmed that he next visited Fierro on the day of sentencing before the Court imposed the sentence. But he did not remember discussing with Fierro filing a notice of appeal

6

or a retainer agreement to pursue an appeal.  Doc. 26 at 42-43.  Day also did not recall discussing

an appeal with Fierro's family before sentencing or telling them that there were issues that

needed to be addressed on appeal.  Doc. 26 at 43.

      Day testified that he did not talk to Fierro after the sentencing because Fierro was

distraught and on the verge of tears.  Doc. 26 at 44.  While Day acknowledged visiting with

Fierro's family post-sentencing, he did not remember discussing an appeal or the necessity of a

$30,000 retainer to pursue the same.  Doc. 26 at 44.  Day added that the claim he requested a

$30,000 retainer was simply "absurd," as he had never charged $30,000 for an appeal.  Also,

Day averred he believed any appeal would have lacked merit and he likely would have prepared

an *Anders* brief in this case.  Doc. 26 at 44-45.  Further, Day did not recall Fierro ever indicating

to him that he wanted to appeal.  Doc. 26 at 45.

      Day acknowledged receiving a letter from Fierro about a month after sentencing, upon

which he learned for the first time that Fierro wanted to appeal.  Doc. 26 at 46.  In his February

25, 2020, response, Day advised Fierro that an appeal would have been frivolous because he had

waived his appeal rights, except for limited circumstances which did not apply.  Doc. 26 at 46-

47.  Day stated his response was consistent with the advice that he would have given Fierro

throughout his representation.  Doc. 26 at 47.  Day admitted though that the BOP returned his

letter because it contained the PSR, which further delayed delivery of the letter to Fierro.  Doc.

26 at 48.  Lastly, Day denied receiving any calls or emails from Fierro or his family post-

sentencing.  Doc. 26 at 48-49.

      On cross examination, Day acknowledged that his file in this case did not contain any

notation of (1) when Day advised Fierro of his appellate rights or (2) whether Fierro had

requested or discussed an appeal with Day.  Doc. 26 at 50.  Day did not recall whether Fierro had

asked for an appeal prior to sentencing or whether they had any conversation about an appeal or requesting an appeal. Doc. 26 at 51-52. Further, Day admitted that he did not visit Fierro after sentencing either in the holdover or at the jail. Doc. 26 at 52. While Day remembered speaking with Fierro's family, he did not recall the details of that conversation or whether an appeal had been discussed. Doc. 26 at 52-53. Although Day conceded Fierro was distraught, he did not recollect visiting him after the sentencing to discuss the sentence or anything that could be done about it. Doc. 26 at 53-54. Further, Day did not recall when he discussed with Fierro his appellate rights but guessed it was at guilty plea stage. Doc. 26 at 59-60.

Day thought that Fierro's statement in his letter, that Day stated he was going to appeal, was inaccurate. Doc. 26 at 55. Yet in his response, Day did not contradict Fierro's statement or otherwise reply to it; nor did he address Fierro's appeal rights, including his right to file at least a notice of appeal. Doc. 26 at 56-57. On redirect, Day clarified that he did not want his response to be confrontational and, thus, he did not refute Fierro's statement that he had indicated that he would appeal his case after sentencing. Doc. 26 at 61.

In response to the Court's inquiry, Day admitted that he did not discuss an appeal with Fierro following sentencing. Doc. 26 at 62. While he acknowledged that Fierro was distraught after the sentencing hearing, Day did not think that he was dissatisfied with the sentence at that time. Doc. 26 at 62-63. Day also admitted that he did not discuss the pros and cons of appealing with Fierro at any time during the 14 days following sentencing. Doc. 26 at 62-63.

## IV. ANALYSIS

An attorney's "duty to perfect an appeal on behalf of a convicted client does not arise on conviction, but when the [defendant] makes known to counsel his desire to appeal the conviction." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993). Stated another way, the

defendant must clearly and timely communicate to his attorney his desire to appeal. *Id.* (denying ineffective assistance claim where the petitioner failed to communicate to counsel his desire to appeal his criminal conviction).

Here, Fierro asserts Day rendered ineffective assistance when he failed to file a notice of appeal as requested. Doc. 2 at 7. In support of his assertion, Fierro cites to his February 21, 2020, letter to counsel. Doc. 2 at 11. In the letter, Fierro explains that Day previously told him that he "would appeal [Fierro's] case," but that Fierro had "not heard from [Day] since the date of [the] sentencing hearing." Doc. 2 at 11. Further, in his sworn *Answers to the Magistrate Judge's Questionnaire*, Doc. 15, Fierro stated in response to the Court's specific inquiry, "[a]t any time following your sentencing, did you discuss with your attorney whether to appeal your conviction or sentence":

> Yes, I did. Upon completion of the Judge ordering the imposed sentence, just before I was remanded, my Attorney Carl Day told me not to be too concerned, he would file the Notice of Appeal, after he met with my family. Day told me once the notice of intent was filed, we would have some time to actually appeal.

Doc. 15 at 1. Fierro further stated:

> On January 13, 2020 at the sentencing hearing, Attorney Day expressly told me he would immediately file the notice of appeal to preserve my rights, then said he was going to speak to my family who were present at the hearing. The purpose of him speaking to my family was to continue in my defense, as the sentencing phase was now complete.[1]

Doc. 15 at 1.

At the evidentiary hearing, Fierro repeatedly testified that Day stated he would file an appeal and Fierro agreed. *See, e.g.,* Doc. 26 at 16 (Fierro restating that Day told him that "he was going to appeal" and Fierro responded "Yes, please appeal, because I don't want to do 20

---

[1] During his testimony, Fierro clarified that his conversation with Day occurred just prior to sentencing in the court holdover cell. Doc. 26 at 29-30.

years.").    On cross examination, Fierro repeated that Day "said he was going to appeal" and Fierro replied, "Okay, let's do it."  Doc. 26 at 21.

On the other hand, Day testified that he did not recall the details of the conversations that occurred with Fierro immediately prior to sentencing or with his family immediately after, or whether an appeal had been discussed.  Doc. 26 at 52-53.  Day was also uncertain whether Fierro had actually asked him to appeal, testifying, "I don't recall him doing that, no. I honestly don't." Doc. 26 at 45.

To the extent that Day's testimony contradicts that of Fierro, the Court as trier of fact must make a credibility determination.  While Fierro was adamant that Day expressly stated he would file a notice of appeal on Fierro's behalf—and the correspondence he later sent to Day corroborates that—Day could not recall basic but critical details about the conversations and failed to document the same.  Given the importance of preserving a Defendant's right to appeal, the Court finds Fierro is the more credible of the two.

Moreover, despite a constitutional obligation to do so, Day admittedly never discussed the possibility of appeal with Fierro post-sentencing, despite his admission that Fierro's reaction after sentencing ("very distraught" and "on the point of tears") suggested he might want to discuss an appeal.  Doc. 26 at 53.  *See Flores-Ortega,* 528 U.S. at 480 (even where a defendant does not instruct counsel to file an appeal or clearly convey his desire to appeal, counsel has a constitutional duty to consult with the defendant about an appeal).  Under the facts of this case, there was never an opportunity for Fierro to equivocate regarding his earlier assertion to Day that he desired to pursue a direct appeal.

Accordingly, the Court finds by a preponderance of the evidence that Fierro clearly asserted his desire to appeal the anticipated sentence of 20 years' imprisonment (double the 10-

year sentence Day had estimated) and never equivocated regarding the same. Thus, the Court finds that Day provided ineffective assistance in this regard.

## V. CONCLUSION

For the foregoing reasons, Fierro's § 2255 motion should be **DISMISSED WITHOUT PREJUDICE,** and the Clerk of the Court should be **DIRECTED** to (1) re-enter the judgment in Fierro's Criminal Case No. 3:19-CR-193-N-2, which will trigger a new appellate deadline in that case, and (2) file a notice of appeal on Fierro's behalf in his criminal case no later than 14 days after the reentry of the criminal judgment.

**SO RECOMMENDED** on April 14, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).